# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 98-30762

---

IN THE MATTER OF: WRT ENERGY CORPORATION, Tax I D No. 72-1133320,

Debtor.

DUCK LAKE ACQUISITION PARTNERS LP,

Appellant,

versus

GULFPORT ENERGY CORPORATION, formerly known as
WRT ENERGY CORPORATION,

Appellee.

---

Appeal from the United States District Court
for the Western District of Louisiana

---

March 24, 1999

Before DAVIS, STEWART, and PARKER, Circuit Judges.

CARL E. STEWART, Circuit Judge:

At issue in this case is whether 11 U.S.C. § 545(3) should be construed to include an exception, and whether the courts below erred in their interpretation of the language of a sublease. We AFFIRM.

**FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff-appellee and debtor Gulfport Energy Corp. ("Gulfport") filed for bankruptcy, and the bankruptcy court confirmed its plan of reorganization. Defendant-appellant Duck Lake Acquisition Partners, L.P. ("Duck Lake") is the sublessor, and Gulfport is the sublessee, under an under an oil, gas and mineral lease of certain mineral interests in the Lac Blanc Field in Vermilion Parish, Louisiana. Duck Lake filed a proof of claim in the amount of $318,377.12 for unpaid prepetition royalties due from production out of Lac Blanc Field. Duck Lake argued its claim was secured by a lessor's privilege pursuant to the provisions of LSA-R.S. 31:146. That section provides:

> The lessor of a mineral lease has, *for the payment of his rent, and other obligations of the lease*, a right of pledge on all equipment, machinery, and other property of the lessee on or attached to the property leased. The right also extends to property of others on or attached to the property leased by their express or implied consent in connection with or contemplation of operations on the lease or land unitized therewith.

Id. (emphasis added). Duck Lake argued that the sublease provides it payments which are best described as "other obligations" under LSA-R.S. 31:146.

In response, Gulfport sought to avoid the lien by filing an objection to the claim under 11 U.S.C. § 545(2), (3) and (4).[1] That section provides, in relevant part:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien . . .
>  . . . .
> (2)     is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists;
> *(3)     is for rent*; or

---

[1]Gulfport also filed an adversary proceeding in the bankruptcy court seeking to avoid the lien. That matter is not presently before us.

 (4)  is a lien of distress for rent.

Id. (emphasis added).

 The bankruptcy court denied the objection brought under 11 U.S.C. § 545(2), but sustained it under § 545(3). The court observed that § 545(3) provided for the avoidance of statutory liens for rent, and that LSA-R.S. 31:146 defined the lessor's privilege provided for in that section as a lien for rent. The court further reasoned that the term rent means the same thing in both the Louisiana law and the federal bankruptcy provision. Specifically, the court relied upon LSA-R.S. 31:123, which notes that:

> Payments to the lessor for the maintenance of a mineral lease during the presence of the lease or any land unitized therewith of a well capable of production in paying quantities, and royalties paid to the lessor on production are rent.

Id. The court also relied on the official comment to that section, which added that "[f]or purposes of administering the mineral lessor-lessee relationship under the articles of the civil Code applicable to ordinary leases, courts have long regarded production royalties as 'rent.'"

 The bankruptcy court denied Duck Lake's motion to reconsideration, and the district court affirmed the bankruptcy court's decisions. This timely appeal followed.

**DISCUSSION**

**I**

 First, Duck Lake co ntends that the district court erred in applying 11 U.S.C. § 545 in this case, because that provision does not provide for the avoidance of statutory liens which enhance the value of the debtor's estate. Duck Lake does not cite any statutory language, judicial opinions or legislative history in support of its argument. Instead, it relies upon a commentator who noted

3

> Statutory liens in favor of such beneficiaries as mechanics, materialmen and contractors secure persons who have contributed to an enhancement of the value of the debtor's estate, and to withhold protection of such liens in bankruptcy cases would give a windfall to other creditors.

5 Lawrence P. King, Collier on Bankruptcy, § 545.01[1] (15th ed. 1998).[2] Because the sublease enhances the value of Gulfport's estate, Duck Lake submits that permitting avoidance in this case would be unfair to Duck Lake and give a windfall to Gulfport's other creditors.

Even if what Duck Lake says is true, that is a matter for Congress and not for this court. The relevant statutory language is clear: it permits avoidance of a lien that is "for rent." See 11 U.S.C. § 545(3). That language makes no exception in cases where the lien for rent enhances the debtor's property. Nor has any court to our knowledge seen fit to create such an exception on its own authority or even based on legislative intent. Like the bankruptcy court and the district court before us, we must reject Duck Lake's contention.

## II

Second, Duck Lake asserts that even if its reading of § 545 is incorrect, the courts below nonetheless erred because the payments which are supposed to be made to it under the sublease are neither "royalties" nor "rent" within the meaning of § 545(3). Rather, Duck Lake submits that these payments are "other obligations," of which § 545 does not permit avoidance.

Gulfport responds that the courts below were entirely correct in their reasoning. It begins by pointing out that the sublease defines the payments to Duck Lake as "a net profits overriding royalty

---

[2]We observe that this point is not even contained in the section devoted to rents. See 5 Lawrence P. King, Collier on Bankruptcy, § 545.04 (15th ed. 1998)(containing no discussion of this point).

interest." Given this express declaration in the sublease that these payments are "royalties," Gulfport observes that Louisiana law establishes that royalties are rent, and that, in turn, 11 U.S.C. § 545(3) specifically permits for the avoidance of statutory liens for rent. In the alternative, Gulfport submits that no matter how one defines "net profits overriding royalty interests" payments, it should still be classified as rent under § 545(3).

We review the district court's decision on a question of law *de novo*. See Randel v. United States Dept. of the Navy, 157 F.3d 393, 395 (5th Cir. 1998). At the very heart of this case, and where the parties' differences stem from, is the decision as to the label properly attached to the payments provided to Duck Lake in the sublease. This determination is critical. If it is a "royalty interest" as Gulfport suggests, then under Louisiana law it is also a rent which is avoidable by 11 U.S.C. § 545(3). Alternatively, if it is something else, an "other obligation" as Duck Lake vaguely describes, then it is neither a royalty interest nor rent, and § 545(3) has no proper application.

The sublease at issue in this case states in pertinent part (and with emphasis added by this court):

> Upon payout of the Stone Oil Corporation Exxon Fee #3 Well, the overriding royalty reserved by Sublessors [Duck Lake] pursuant hereto shall automatically convert to *a twenty-five percent (25%) net profits overriding royalty interest* in and to the subleased premises and the production from said well to be shared equally by Armerada and Superior.
> . . . .
> As to any other wells drilled by Sublessee [Gulfport] on the subleased premise and completed as producers of oil or gas, or both, in commercial quantities, Sublessors [Duck Lake] shall not be entitled to share in the production from such well or wells, until payout of an individual well. Effective as of the date a subsequent producer has paid out, Sublessors [Duck Lake] shall then own in equal proportions *a twenty-five percent (25%) net profits overriding royalty interest* in the production from such well.

Gulfport urges on appeal that this language expressly provides to Duck Lake a "royalty interest." In contrast, Duck Lake takes issue with Gulfport's description. Duck Lake submits that, under LSA-R.S. 31-80, a royalty interest is a non-cost bearing interest. Because the interest provided to it in the sublease is instead cost-bearing, Duck Lake argues that this payment is not a royalty interest. In other words, if it walks like a duck, and talks like a duck, nine times out of ten, it is a duck.

Unfortunately, this case is that tenth time. While LSA-R.S. 31-80 describes a royalty interest as a non-cost bearing interest, it also says that this rule operates "[u]nless expressly qualified by the parties." LSA-R.S. 31-80. The sublease at issue here expressly describes Duck Lake's interest as a "royalty interest." There is no getting around the clear language of the sublease, and as such, the appellant's arguments are without merit.

## CONCLUSION

For the reasons set forth above, we AFFIRM.